United States District Court
Southern District of Texas

**ENTERED**

June 14, 2016

David J. Bradley, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| PHILIP E. ASHCRAFT and | § | |
| CHRISTOPHER D. GANDARA, *individually and* | § | |
| *on behalf of others similarly situated*, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-16-823 |
| | § | |
| CORE LABORATORIES, LP, *et al.*, | § | |
| | § | |
| *Defendant*s. | § | |

### MEMORANDUM OPINION & ORDER

Pending before the court is Philip E. Ashcraft ("Ashcraft") and Christopher D. Gandara's ("Gandara") (collectively, "Plaintiffs") motion for conditional certification. Dkt. 18. Having considered the motion, response, reply, sur-reply, supplemental briefing, and the applicable law, the court is of the opinion that the motion should be GRANTED.

### I. BACKGROUND

Defendant Core Laboratories, LP ("Core Laboratories") provides reservoir management services to the petroleum industry. Dkt. 11, Ex. 1 at 3. Defendant ProTechnics, a division of Core Laboratories, specializes in providing imaging analysis and diagnostics. *Id.* On December 6, 2010, ProTechnics hired Ashcraft as a Field Service Representative. Dkt. 1 at 3; Dkt. 9 at 2, 4. At the time Plaintiffs filed the pending motion, Ashcraft was still employed in this capacity. Dkt. 18, Ex. A at 1. On July 18, 2012, ProTechnics hired Gandara as a Field Service Representative. Dkt. 1 at 7; Dkt. 9 at 5. Gandara's employment was terminated on March 20, 2015. Dkt. 18, Ex. B at 1. Plaintiffs provide identical descriptions of the job of Field Service Representative:

> My duties as a Field Service Representative included traveling to the defendants' facilities to pick up tools and materials to be used in performing [my] duties at the defendants' customers oil and gas well sites, traveling to the gas and oil well sites of the defendants' customers, injecting fluids and radioactive isotopes into the water and sand used to conduct hydraulic fracturing at the well sites, taking samples of fluids and sand used in the hydraulic fracturing for analysis at the defendants' laboratories, remaining on the well sites to monitor the hydraulic fracturing operations, and traveling back to the defendants' facilities to return tolls and materials and to drop off fluid and sand samples for analysis.

Dkt. 18, Ex. A at 1; Dkt. 18, Ex. B at 1.  Plaintiffs worked in Protechnics's Parkersburg, West Virginia facility.  Dkt. 19 at 1.  Plaintiffs worked under the supervision of defendant John Kalika, the District Manager for the facility.  Dkt. 1 at 2–3.

At the time Plaintiffs began working for Protechnics, they were required to work substantial overtime hours but were paid only a salary and a bonus without overtime compensation.  Dkt. 1 at 5, 8.  In October 2014, Ashcraft made a complaint to the U.S. Department of Labor Wage and Hour Division regarding his compensation.  *Id.* at 6.  The Department of Labor subsequently conducted an audit of ProTechnics's Parkersburg, West Virginia facility and concluded that Ashcraft was due overtime wages.  *Id.* at 6; Dkt. 9 at 4–5.  On November 8, 2014, Protechnics and Core Laboratories began paying all Field Service Representatives overtime wages.  Dkt. 9 at 5.  However, Plaintiffs did not receive overtime compensation for the overtime hours they worked prior to November 8, 2014.  Dkt. 1 at 6–7.

On March 16, 2015, Plaintiffs filed this lawsuit in the Southern District of West Virginia against Protechnics, Core Laboratories, and John Kalika (collectively, "Defendants"), seeking to recover unpaid overtime wages under the Fair Labor Standards Act ("FLSA").  Dkt. 1 at 1.  Plaintiffs filed the lawsuit both individually and on behalf of other similarly situated persons.  *Id.*  On June 26,

2015, Plaintiffs filed the pending motion for conditional certification of a collective action under the FLSA.  Dkt. 18.  Plaintiffs seek conditional certification of a collective action defined as:

> All employees of ProTechnics, a division of Core Laboratories, LP, working from ProTechnics'[s] facility located in Parkersburg, West Virginia as Field Service Representatives or performing the duties of Field Service Representatives from March 16, 2012[,] until November 8, 2014.

*Id.* at 3.  On July 10, 2015, Defendants filed a response in opposition to conditional certification. Dkt. 20.  On July 17, 2015, Plaintiffs filed a reply in support of their motion.  Dkt. 22.  On August 25, 2015, Defendants filed a sur-reply.  Dkt. 33.

On March 28, 2016, the district court for the Southern District of West Virginia transferred the case to this court on Defendants' motion.  Dkt. 48.  On April 26, 2016, this court entered an order requesting supplemental briefing regarding the applicable Fifth Circuit case law and the developments in this case since Plaintiffs' filed their motion for conditional certification.  Dkt. 61. The parties subsequently filed their supplemental briefs.  Dkts. 62, 63.

## II. Legal Standard

Section 207(a) of the FLSA prohibits an employer from requiring nonexempt employees to work in excess of forty hours in a given workweek unless the employees are compensated for the excess hours at a rate of at least one and one-half times their regular rate.  29 U.S.C. § 207 (2012). Section 216(b) provides employees with a cause of action against employers who violate § 207.  *Id.* § 216(b).  Further, § 216(b) permits employees to bring collective actions on behalf of "themselves and other employees similarly situated."  *Id.*    Before a case may proceed as a collective action, however, the plaintiff must make an initial showing that the case is appropriate for collective action treatment.

Courts employ two different tests to determine whether to certify a collective action under the FLSA: the spurious class action *Shushan* approach or the two-step *Lusardi* approach. *Walker v. Honghua Am., LLC*, 870 F. Supp. 2d 462, 465 (S.D. Tex. 2012) (Ellison, J.). *See generally Shushan v. Univ. of Colo. at Boulder*, 132 F.R.D. 263 (D. Colo. 1990); *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987). The Fifth Circuit has declined to decide which test is preferable. *Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 226 (5th Cir. 2011); *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1216 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S. Ct. 2148 (2003). District courts within the Fifth Circuit, including this court, have consistently applied the *Lusardi* test. *See Johnson v. Big Lots Stores, Inc.*, No. 04-CV-3201, 2007 WL 5200224, at *3 (E.D. La. Aug. 21, 2007) ("Since *Mooney* district courts in the Fifth Circuit have uniformly used [the *Lusardi* approach] to determine whether a collective [action] should be certified under the FLSA."); *see also Abdur-Rahim v. Amerom, Inc.*, No. 13-CV-2105, 2013 WL 6078955, at *2 (S.D. Tex. Nov. 19, 2013) (Miller, J.) (noting that this court has adopted the *Lusardi* test). The court finds no reason to deviate from this precedent and will therefore apply the *Lusardi* test here.

The *Lusardi* test proceeds in two stages: (1) the "notice" stage and (2) the "decertification" stage. *Moore v. Special Distribution Servs. Inc.*, No. 06-CV-3946, 2007 WL 2318478, at *2 (S.D. Tex. Aug. 8, 2007) (Harmon, J.). At the notice stage, the court determines whether to conditionally certify a collective action and notify potential class members of the opportunity to opt in to the lawsuit. *Walker*, 870 F. Supp. 2d at 465. The plaintiff is required to make a minimal showing that "(1) there is a reasonable basis for crediting the assertions that aggrieved individuals exist, (2) that those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted, and (3) that those individuals want to opt in to the lawsuit." *Aguirre v. SBC Commc'ns, Inc.*, No. 05-CV-3198, 2006 WL 964554, at *6 (S.D. Tex. Apr. 11, 2006) (Rosenthal,

4

J.).  At the notice stage, the parties typically have presented only affidavits and have conducted no

discovery.  *McKnight v. D. Hous., Inc.*, 756 F. Supp. 2d 794, 802 (S.D. Tex. 2010) (Rosenthal, J.).

However, in some cases, such as this case, the parties have taken some discovery.  *Id.*  In deciding

whether to issue notice to potential class members, the court applies a lenient standard which

typically results in conditional certification.  *See Walker*, 870 F. Supp. 2d at 465  (noting that

collective actions are generally favored under the FLSA).  However, conditional certification is not

automatic.  *Ali v. Sugarland Petroleum*, No. 09-CV-0170, 2009 WL 5173508, at *5 (S.D. Tex. Dec.

22, 2009) (Ellison, J.).  "A factual basis for the allegations is needed to satisfy the first step." *Perez*

*v. Guardian Equity Mgmt., LLC*, No. 10-CV-0196, 2011 WL 2672431, at *4 (S.D. Tex. July 7, 2011)

(Rosenthal, J.); *see also Hall v. Burk*, No. 01-CV-2487, 2002 WL 413901, at *3 (N.D. Tex. Mar. 11,

2002) ("Unsupported assertions of widespread violations are not sufficient to meet Plaintiff's

burden.").  If the court conditionally certifies the class and issues notice, the case proceeds as a

collective action during discovery.  *Walker*, 870 F. Supp. 2d at 466.

The decertification stage begins when the defendant moves to decertify the conditionally-

certified class, usually after discovery is largely complete.  *Mooney*, 54 F.3d at 1214.  At this stage,

the court reviews the information obtained during discovery and makes a factual determination

regarding whether the members of the conditionally-certified class are truly similarly situated.  *Id.*

The plaintiff's burden is more stringent at the decertification stage than at the lenient notice stage.

*McKnight*, 756 F. Supp. 2d at 802.  If the claimants are similarly situated, the case proceeds to trial

as a collective action.  *Mooney*, 54 F.3d at 1214.  If the claimants are not similarly situated, the court

decertifies the collective action and dismisses the opt-in plaintiffs without prejudice.  *Id.*  The

original plaintiffs then proceed to trial on their individual claims.  *Id.*

Although the parties in this case have engaged in some written discovery, no depositions have been taken and discovery does not close until December 20, 2016. Dkts. 58, 62, 63. Therefore, this case is not sufficiently advanced to warrant a decertification-stage analysis. Further, neither party has argued that the heightened, decertification-stage analysis should apply. Accordingly, the court will apply the *Lusardi* notice stage inquiry.

### III. ANALYSIS

As noted above, at the notice stage Plaintiffs must make a minimal showing that "(1) there is a reasonable basis for crediting the assertions that aggrieved individuals exist, (2) that those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted, and (3) that those individuals want to opt in to the lawsuit." *Aguirre*, 2006 WL 964554, at *6. The court will address each factor in turn.

### A. Whether Aggrieved Individuals Exist

Plaintiffs allege that there are approximately 24 employees working for Defendants in West Virginia who performed similar duties, worked similar schedules, and were subject to the same compensation scheme as Plaintiffs. Dkt. 1 at 8. Plaintiffs also submitted sworn declarations from Ashcraft, Gandara, and opt-in plaintiff Gregory Dornick, testifying that there were approximately 24 similarly situated individuals employed by Defendants. Dkt. 18, Exs. A–C. In their answer, Defendants admit that they employ individuals in the role of Field Service Representative and that they "began paying all Field Service Representatives overtime wages" on November 8, 2014. Dkt. 9 at 4–5. These admissions establish that a group of individuals exist who were employed by Defendants as Field Service Representatives and that those individuals were at one point denied overtime wages. Further, at this point 10 individuals, in addition to Plaintiffs, have filed consent forms with the court indicating their interest in opting in to this lawsuit. Dkts. 17, 23, 42, 43, 44,

6

47, 57, 59, 60, 64.   The court finds that this information is more than sufficient to support a reasonable belief that other aggrieved individuals exist.

**B.  Whether the Aggrieved Individuals are Similarly Situated to Plaintiffs**

Defendants' primary argument against conditional certification is that Plaintiffs' proposed definition of the collective action is so broad that it would require fact intensive, individualized determinations regarding whether each member of the collective action is "similarly situated" to Plaintiffs.  Dkt. 20 at 4.  Defendants argue that these individualized determinations will be required because the proposed collective action includes not only Field Service Representatives but also those "performing the duties of Field Service Representatives."  Dkt. 20 at 4–5.  Therefore, Defendants conclude, the court would be required to make fact intensive determinations about whether individuals that did not hold the Field Service Representative title performed sufficiently similar duties to be included in the collective action.  *Id.*

The court finds that Plaintiffs' proposed definition of the collective action is not overly broad. The inclusion of those "performing the duties of Field Service Representatives" is necessary to ensure that the collective action includes people who perform substantially similar work but who may have a different job title.  Courts have been clear that putative collective action members may still be "similarly situated" despite having different job titles or slightly different duties.  *See Jones v. Cretic Energy Servs.*, LLC, No. 15-CV-0051, 2015 WL 8489978, at *8 (S.D. Tex. Dec. 9, 2015) (Lake, J.) ("Employees with different job titles are similarly situated for the purpose of an opt-in FLSA class when their day-to-day job duties do not vary substantially."); *Detho v. Bilal*, No. 07-CV-2160, 2008 WL 1730542, at *4 (S.D. Tex. Apr. 10, 2008) (Rosenthal, J.) (holding that the fact the plaintiff sought to include other employees with "superficially different job titles or slightly different job duties" in the collective action did not defeat a finding that those employees were similarly

7

situated).  Courts have refused to conditionally certify a collective action where the necessity of individualized inquiries would "eliminate 'the economy of scale envisioned by the FLSA collective action procedure.'"  *Maynor v. Dow Chem. Co.*, No. 07-CV-0504, 2008 WL 2220394, at *7 (S.D. Tex. May 28, 2008) (Rosenthal, J.) (citation omitted).  In this case, however, there is no indication that substantial individualized inquiries will be necessary.  The proposed collective action, at its maximum, contains only 24 people working at a single facility.  The collective action is narrowly defined and presents very limited manageability concerns.  The possibility that a few individuals may opt-in to this lawsuit who do not hold the title of "Field Service Representative" is not sufficient to undermine the efficiency of the collective action procedure.  *See* Dkt. 62, Ex. 5 (indicating that the vast majority of the putative collective action members hold the title of "Field Service Representative," but that there are three putative collection action members with the title of "Production Service Specialist").  This case is clearly distinguishable from cases cited by Defendants where the plaintiff asked for conditional certification under an extremely broad definition of the collective action.  *See Donihoo v. Dallas Airmotive, Inc.*, No. 3:97-CV-0109, 1998 WL 91256, at *1 (N.D. Tex. Feb. 23, 1998) (rejecting the plaintiff's request to send notice to "every salaried employee" of the defendant).  The court finds that, at the lenient notice stage, Plaintiffs have sufficiently shown that the other aggrieved individuals are similarly situated to Plaintiffs.

**C.  Whether the Aggrieved Individuals Want to Opt In to the Lawsuit**

In Defendants' response in opposition to conditional certification, Defendants argued that Plaintiffs had failed to show that similarly situated individuals wanted to opt in to the litigation. Dkt. 20 at 6.  However, at the time, only one person had filed a declaration indicating a desire to opt in.  As noted above, 10 individuals in addition to Plaintiffs have now filed consent forms with the court, indicating their interest in opting in to this lawsuit.  In this situation, Plaintiffs have

unquestionably established that there are aggrieved individuals who want to opt in to the lawsuit. *See Simmons v. T-Mobile USA, Inc.*, No. 06-CV-1820, 2007 WL 210008, at *9 (S.D. Tex. Jan. 24, 2007) (Atlas, J.) (requiring only that "*a few* similarly situated individuals seek to join the lawsuit"(emphasis added)).

The court finds that Plaintiffs have made a sufficient showing at the first stage of the *Lusardi* inquiry to justify the issuance of notice to potential collective action members. Accordingly, Plaintiffs' motion for conditional certification is GRANTED.

### D. Potential Collective Action Member Information

Plaintiffs have requested that Defendants provide the name, last known mailing address, last known email address, last known telephone number, and dates of employment for each putative collective action member. Dkt. 18 at 4. The court has previously found that putative collection action members' names and mailing addresses are sufficient to effectuate notice. *See Abdur-Rahim*, 2013 WL 6078955, at *4 (explaining that the court has "generally restricted the defendants' production to the names and addresses of potential plaintiffs" at the notice stage). The court finds no reason to require the additional production of email addresses and telephone numbers in this case. Accordingly, Defendants are ordered to produce only the name, last known mailing address, and dates of employment for each putative collective action member.

### E. Proposed Notice and Consent Forms

Besides objecting to Plaintiffs' definition of the collective action, Defendants have lodged no objections to the notice and consent forms proposed by Plaintiffs. Accordingly, the court APPROVES Plaintiffs' proposed notice and consent forms. However, because this case was recently transferred, Plaintiffs are ORDERED to update the notice and consent forms to include the proper case number, court, and judge presiding.

## IV. CONCLUSION

Plaintiffs' motion for conditional certification (Dkt. 18) is GRANTED. It is further ORDERED that, within 14 days from the entry of this order, Defendants shall provide Plaintiffs with the full names, last known addresses, and dates of employment for the following class of persons:

> All employees of ProTechnics, a division of Core Laboratories, LP, working from ProTechnics's facility located in Parkersburg, West Virginia as Field Service Representatives or performing the duties of Field Service Representatives from March 16, 2012, until November 8, 2014.

It is further ORDERED that the notice and consent forms shall be issued according to Plaintiffs' proposals, except that Plaintiffs are ORDERED to update the forms to reflect that this case is currently pending in the Southern District of Texas before Judge Gray H. Miller under the case number 4:16-cv-823. Plaintiffs' counsel shall send the notices at its own expense to the potential collective action members via first-class mail after Defendants have complied with this order. The notices shall include a consent form and a self-addressed, stamped envelope. Each potential plaintiff will have 60 days from the postmark date of the notice to return his or her consent form to Plaintiffs' counsel.

It is so ORDERED.

Signed at Houston, Texas on June 14, 2016.

Gray H. Miller
United States District Judge